1

2 IN THE UNITED STATES DISTRICT COURT

3 FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7 PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS, et al.,

8

9 Plaintiffs,

10 v.

11

12 WELDWAY CONSTRUCTION, INC., et al.,

13

14 Defendants.

Case No.: C-12-05683 JCS

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## I. INTRODUCTION

On November 5, 2012, Plaintiffs Pension Plan for Pension Trust Fund for Operating Engineers ("Fund") and F.G. Crosthwaite and Russell E. Burns as trustees (collectively "Plaintiffs") filed a Complaint seeking money judgment against Defendants Weldway Construction, Inc. ("WCI") and Weldway, Inc. ("Weldway," collectively "Defendants"). Plaintiffs seek to recover withdrawal liability and related damages from Defendants pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Presently before the Court are two Motions: (1) Plaintiff's Motion for a Preliminary Injunction Enjoining Defendants from Participating in Arbitration Proceedings or, in the Alternative, for Stay of Arbitration Proceedings ("Plaintiff's Motion"); and (2) Defendant's Cross-Motion to Compel Arbitration ("Defendant's Motion"). The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons discussed below, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Motion.[1]

---

[1] Plaintiffs request judicial notice of four documents, two date stamped printouts California Secretary of State Website and two date stamped printouts from the California Contractor's State Licensing Board Website. Defendants do not object and

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Complaint

Plaintiffs state that the Fund is (a) an "employee benefit plan" as defined in ERISA § 3(3) (29 U.S.C. § 1002(3)), (b) an "employee benefit pension plan" as defined in ERISA § 3(2) (29 U.S.C. § 1002(2)), and (c) a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) and 1301(a)(3)).  Complaint, ¶ 5.

Plaintiffs allege that WCI was a participating employer in the Fund pursuant to a collective bargaining agreement ("CBA") with the Operating Engineers Local Union No. 3 ("Union").  *Id.* at ¶ 13.  Plaintiffs state that WCI was obligated to and did make contributions to the Fund on behalf of its employees covered under the CBA until about September 1, 2009, when it made a complete withdrawal from the Fund subjecting itself to withdrawal liability.  *Id.* at ¶¶ 13-14.  Plaintiffs allege that Defendants Weldway and WCI are members of the same controlled group, and as such are jointly liable for withdrawal liability.  *Id.* at ¶ 3.  Plaintiffs also allege that Defendants failed to provide sufficient information to identify each member of their controlled group.  *Id.* at ¶ 32.  Plaintiffs allege causes of action for violations of ERISA § 4219 and ERISA § 4219(a) and seek monetary damages, liquidated damages, costs, attorneys' fees, and injunctive relief.  *Id.* at ¶¶ 29-30, 34-35 (citing 29 U.S.C. §§ 1381, 1399(a)).

In addition, Plaintiffs allege that Defendants failed to timely initiate arbitration.  *Id.* at ¶ 21 (citing ERISA § 4221(a)(1); 29 U.S.C. § 1401(a)).  Plaintiffs further allege that Defendants have demanded and are pursuing arbitration.  *Id.* at ¶ 41.  Plaintiffs seek declaratory and injunctive relief barring Defendants from challenging their withdrawal liability in arbitration.  *Id.* at ¶¶ 38-39, 43-48.

### B.    Factual Background

Plaintiffs state that WCI withdrew from participation in the Fund during the plan year beginning January 1, 2009.  Plaintiffs' Motion, 3.  On October 25, 2010, Plaintiffs sent WCI a letter that they had not, at that time, discovered any billable discrepancies in their account for the period running from January 1, 2008 to December 31, 2009.  Declaration of Steve Brooks in Support of Defendants' Reply ("Brooks Declaration"), Ex. 1.  On September 16, 2011, Plaintiffs sent WCI a

---

the documents are matters of public record.  Judicial notice of those four documents is granted.  Defendants requested their reasonable attorneys' fees in opposing Plaintiffs' Motion.  As Plaintiffs' Motion is granted, that request is denied.

1   notice of delinquency relating to May, 2004. *Id*. at Ex. 2. On October 4, 2011, Plaintiffs sent WCI a

2   letter to confirm that the prior delinquency notice had been sent in error. *Id*. at Ex. 3.

3   In a December 7, 2011 letter addressed to WCI, Plaintiffs notified WCI that they had assessed

4   it with withdrawal liability in the sum of $133,812. Plaintiffs' Motion, 3 (citing Declaration of Greg

5   Trento in Support of Plaintiffs' Motion ("Trento Declaration"), ¶ 11). Plaintiffs argue that Defendants

6   were required to request review of the assessment by March 10, 2012. *Id*. (citing ERISA § 4219(b);

7   29 U.S.C. § 1399(b)(2)). Weldway received the letter on December 8, 2011. Declaration of Aurelio

8   J. Perez in Support of Defendants' Motion ("Perez Declaration"), Ex. 2.

9   On December 14, 2011, Weldway responded to Plaintiffs' letter stating that Plaintiffs' letter

10  was sent in error because Plaintiffs had confused Weldway with WCI. Plaintiffs' Motion, 3 (citing

11  Declaration of Julie A. Ostil in Support of Plaintiffs' Motion ("Ostil Declaration"), ¶ 6, Ex. E).

12  Weldway elaborated that it, unlike WCI, has never been a signatory to any union agreements. *Id*.

13  (citing Ostil Declaration, ¶ 6, Ex. E). Rather, Weldway's position was that WCI withdrew from the

14  Fund because it went out of business, but Weldway never had any connection with the Fund. On

15  December 15, 2011, Plaintiffs' counsel spoke to Steven Brooks ("Brooks"), the purported owner of

16  Weldway and WCI. *Id*. (citing Ostil Declaration, ¶ 7). Plaintiffs' counsel claims that she requested

17  additional information to evaluate Weldway's contentions set forth in the December 14, 2011 letter.

18  *Id*. (citing Ostil Declaration, ¶ 7). Brooks contests this assertion. Brooks Declaration, ¶ 21. Brooks

19  agrees that Plaintiffs' counsel was planning on performing a further review, but he believed Plaintiffs'

20  counsel would notify him if they had reason to believe their assessment was valid. *Id*. at ¶¶ 22-24.

21  Based on the ensuing six months of silence, he assumed that the Fund had conceded his position. *Id*.

22  at ¶ 25.

23  On May 30, 2012, Plaintiffs' counsel sent a letter to Brooks, referencing a conversation

24  "earlier this year," summarizing the content of that conversation, and requesting documents to verify

25  Brooks' purported position. Plaintiffs' Motion, 3-4 (citing Ostil Declaration, ¶ 8, Ex. F). Plaintiffs

26  contend that counsel was reiterating requests made during the December 15, 2011 phone call. *Id*. at 3.

27  Defendants assert that after Weldway sent the December 14, 2011 letter Plaintiffs did not

28  request any documentation until Plaintiffs' May 30, 2012 letter. Defendants' Motion, 1-2. Moreover,

United States District Court
Northern District of California

1   Defendants initially called into question the timing of the purported December 15, 2011 phone

2   conversation by noting that Plaintiffs' May 30, 2012 letter refers to a conversation "earlier [that]

3   year."  Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Defendants'

4   Opposition"), 6 (citing Perez Declaration, Ex. 3).  However, Plaintiffs' September 18, 2012 letter

5   states that the purported December 15, 2011 phone conversation was the only communication

6   between the parties after December 14, 2012, and before May 30, 2012.  *Id*. at 6 (citing Perez

7   Declaration, Ex. 13).  Defendants conceded in their October 19, 2012 letter to the arbitrator and in

8   the Brooks Declaration that there were no communications between Plaintiffs and Defendants between

9   December 16, 2011 and May 30, 2012.  Perez Declaration, Ex. 14; Brooks Declaration, ¶¶ 18, 24.

10      On June 20, 2012, Weldway's counsel sent a letter responding to Plaintiffs' May 30, 2012

11   letter.  Plaintiffs' Motion, 4 (citing Ostil Declaration, ¶ 9, Ex. G).  The letter restated Weldway's

12   position as laid out in the December 14, 2011 letter and included the Articles and Bylaws of both

13   Weldway and WCI, which Plaintiffs deemed unresponsive to their document request.  *Id*. at 4 (citing

14   Ostil Declaration, ¶ 9, Ex. G).  The letter further stated that Defendants expected the matter resolved

15   promptly "via written confirmation."  Perez Declaration, Ex. 4.  On August 8, 2012, Plaintiffs sent

16   Weldway a letter containing a formal denial of their "request for review."  Plaintiffs' Motion, 4 (citing

17   Ostil Declaration, ¶ 10, Ex. H).  On August 16, 2012, Weldway filed an arbitration demand with the

18   American Arbitration Association ("AAA") and sent a copy to Plaintiffs' counsel.  *Id*. (citing Ostil

19   Declaration, ¶ 11, Ex. I).

20      On August 24, 2012, the AAA sent Plaintiffs a letter stating that Plaintiffs were required to

21   submit a response to the demand by August 31, 2012.  Plaintiffs' Opposition to Defendants' Cross-

22   Motion to Compel Arbitration ("Plaintiffs' Opposition"), 4 (citing Declaration of Julie Richardson

23   ("Richardson Declaration"), ¶ 3, Ex. 1).  The letter also required Plaintiffs to respond to a list of

24   arbitrators by the same date.  *Id*. (citing Richardson Declaration, ¶ 3, Ex. 1).  The AAA would treat

25   failure to respond to the list as demonstrating that all arbitrators on the list were acceptable.  *Id*. (citing

26   Richardson Declaration, ¶ 3, Ex. 1).

27      On August 30, 2012, the parties submitted the name of the agreed-upon arbitrator to the AAA.

28   *Id*. (citing Richardson Declaration, ¶ 4, Ex. 2).  On August 31, 2012, Plaintiffs filed an answering

1 statement and counterclaim request ("answering statement") with the AAA.  Plaintiffs' Motion, 4

2 (citing Ostil Declaration, ¶ 12, Ex. J).  In their answering statement, Plaintiffs argued that Weldway

3 did not demand to initiate arbitration within the time specified by ERISA § 4221(a)(1) and thus that

4 the arbitrator lacked jurisdiction to hear the merits.  Ostil Declaration, Ex. J.  Plaintiffs included a

5 counterclaim, seeking to have the arbitration proceeding dismissed with a determination that

6 Defendants waived its arbitrable defenses by failing to timely initiate arbitration.  *Id*.  Pending the

7 arbitrator's decision on the jurisdictional issue, Plaintiffs reserved the right to amend its counterclaim

8 to seek withdrawal liability, interest, liquidated damages, costs, attorneys' fees, and information

9 regarding Defendants controlled group.  *Id*.  Plaintiffs contend that they reserved their right to judicial

10 review.  Plaintiffs' Motion, 4.

11      On September 10, 2012, after learning the agreed-upon arbitrator would be out of the country

12 until September 18, 2012, Plaintiff's counsel wrote AAA stating that it was willing to await the

13 arbitrator's return.  Defendants' Motion, 3 (citing Perez Declaration, Ex. 11).

14      On September 13, 2012, Defendants filed a statement with the AAA alleging that they made a

15 request for review between December 16, 2012 and March 6, 2012.  Plaintiffs' Motion, 4 (citing Ostil

16 Declaration, ¶ 13, Ex. K).  On September 18, 2012, Plaintiffs submitted a letter stating that no

17 communications between the parties occurred between December 15, 2012 and May 30, 2012.  *Id*.

18 (citing Ostil Declaration, ¶ 13, Ex. L).  On October 19, 2012, Defendants sent a letter to the arbitrator

19 stating that their prior assertion was in error and that no communications occurred during that time

20 period.  Ostil Declaration, ¶ 14, Ex. M.

21      On October 24, 2012, the parties held a preliminary case management call with the arbitrator.

22 Plaintiffs' Motion, 4 (citing Ostil Declaration, ¶ 15).  Plaintiffs requested and expected the arbitrator

23 to dismiss the matter for lack of jurisdiction.  *Id*. (citing Ostil Declaration, ¶ 15).  Plaintiffs contend

24 that their counsel stated Plaintiffs were reserving the right to seek relief in federal court.  *Id*. (citing

25 Ostil Declaration, ¶ 15).  Defendants disagree, arguing that Plaintiffs' counsel never suggested that the

26 arbitrator lacked jurisdiction to decide the bifurcation issue during the October 24, 2012 telephonic

27 conference.  Defendants' Motion, 4 (citing Perez Declaration, ¶ 18).  The arbitrator wanted briefing

28 on the jurisdictional issue.  Plaintiffs' Motion, 4-5 (citing Ostil Declaration, ¶ 16).  In addition,

United States District Court
Northern District of California

Defendants contended that the jurisdictional issue should be decided along with the merits. *Id*. at 5 (citing Ostil Declaration, ¶ 16). Plaintiffs contended that jurisdiction was a threshold matter that should be determined first. *Id*. (citing Ostil Declaration, ¶ 16). The parties agreed to a briefing schedule that would resolve only the bifurcation of the issues. *Id*. (citing Ostil Declaration, ¶ 16). In a letter date November 6, 2012, prior to briefing, Plaintiffs informed the arbitrator and Defendants that they were refusing to participate in any further arbitration proceedings including briefing the issue of bifurcation and submitting the issue of jurisdiction to the arbitrator. *Id*. (citing Ostil Declaration, ¶ 17, Ex. N).

### C.   Plaintiffs' Contentions

In their Motion, Plaintiffs argue that this Court should issue a preliminary injunction stopping the arbitration proceedings during the pendency of this action. Plaintiffs argue that (1) Plaintiffs are likely to succeed on the merits; (2) Plaintiffs will likely suffer irreparable harm if Defendants are not enjoined from pursuing arbitration; (3) the balance of hardships favors issuance of an injunction; and (4) issuance of a preliminary injunction serves the public interest. Plaintiffs' Motion, 6-18.

Plaintiffs make two alternative arguments as to their likelihood of success on the merits. On one hand, Plaintiffs argue that Defendants failed to timely request review of their decision under ERISA § 4219(b). *Id*. at 6 (citing 29 U.S.C. § 1399). Plaintiffs contend that defendants were required to request review within 90 days of receiving the Fund's assessment of liability. *Id*. at 7 (Citing ERISA § 4219(b)(2)(A); 29 U.S.C. § 1399(b)(2)(A)). Under this argument, Defendants December 14, 2011 letter did not satisfy the requirements of a request for review set forth in ERISA § 4219(b)(2)(A) because (1) it did not ask the plan sponsor to review any specific matter; (2) it did not identify any inaccuracies in the determination of the amount of unfunded vested benefits allocable to the employer; and (3) it did not provide any additional relevant information. *Id*. at 7-8 (citing 29 U.S.C. § 1399(b)(2)). By failing to request review, Plaintiffs argue that Defendants lost their right to arbitrate their objections. *Id*. at 8. If arbitration is not timely initiated, Plaintiffs contend that the amounts demanded by the plan sponsor are due and owing and the affirmative defenses laid out in ERISA are waived. *Id*. at 12-13 (citing ERISA § 4221(b)(1); 29 U.S.C. § 1401(b)(1); *Teamsters Pension Trust*

1    *Fund-Board of Trustees of the W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir.

2    1987)).

3            In the alternative, Plaintiffs argue that, even treating the December 14, 2011 letter as a request

4    for review, Defendants were required to initiate arbitration within 60 days of the earlier of:  (a) 120

5    days after the request for review; or (b) the date that the employer is notified of the plan sponsor's

6    response to the request for review.  *Id*. at 7-8 (citing ERISA § 4221(a)(1)(A) and (B); 29 U.S.C. §

7    1401(a)(1)(A) and (B)).  Plaintiffs contend that the earlier event was that described in "(a)."  *Id*. at 8.

8    Thus, the window for initiating arbitration was open for 60 days beginning 120 days after Defendants'

9    request for review.  *Id*. (citing ERISA § 4221(a); 29 U.S.C. § 1401(a)).  Plaintiffs conclude that

10   Defendants were required to initiate arbitration between April 12, 2012 and June 11, 2012.  *Id*.

11   Because they argue arbitration was not timely initiated, Plaintiffs argue that the amount they

12   demanded is due and owing.

13           Moreover, Plaintiffs argue that Defendants cannot excuse these deadlines either by equitable

14   tolling or by manufacturing ambiguity in the record.  Plaintiffs' Reply, 3-8.  First, Plaintiffs contend

15   that the only ambiguity that Defendants can attempt to produce in the record is the date of the

16   purported December 15, 2011 phone call.  *Id*. at 3.  Plaintiffs argue that any apparent ambiguity is the

17   result of an inadvertent error by counsel in drafting the May 30, 2012 letter.  *Id*. at 2-3.  In any event,

18   Plaintiffs state that the date of the conversation is irrelevant to the statutory deadlines.  *Id*. at 3.

19   Second, Plaintiff contends that Defendants cannot establish the affirmative defense of equitable

20   tolling, even if the defense exists under ERISA, because Defendants cannot show that extraordinary

21   circumstances prevented them from exercising their rights.  *Id*. at 4-8 (citing *Gonzales v. O Centro*

22   *Espirita Beneficente Unaio do Vegetal*, 546 U.S. 418, 429-30, 126 S.Ct. 1211, 163 L.Ed.2d 1017

23   (2006) (burden on opposing party to establish likelihood of success on affirmative defense in the

24   context of a motion for a preliminary injunction); *Pace v. DeGuglielmo*, 544 U.S. 408, 418, 125 S.Ct.

25   1807, 161 L.Ed.2d 669 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of

26   establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some

27   extraordinary circumstance stood in his way")).  Rather, Plaintiffs state that they made Defendants

28   aware of the applicable deadlines.  *Id*. at 6 (citing Trento Declaration, Ex. F).

1    Plaintiffs argue that they are likely to suffer irreparable harm absent issuance of a preliminary

2    injunction because they will be forced to participate in futile arbitration proceedings.  Plaintiffs'

3    Motion, 15 (citing *Monavie, LLC v. Quixtar Inc.*, 741 F.Supp.2d 1227, 1240-1241 (D.Utah 2009)

4    (citing cases); *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192 (8th Cir. 1997)).

5    Plaintiffs further contend that they are suffering economic harm that is unquantifiable because they

6    are losing investment opportunities, that Defendants may transfer assets that could be used to satisfy

7    the judgment, and that they are forced to incur the costs of proceeding on two separate tracks absent

8    injunction.  *Id*. at 16.

9    Plaintiffs contend that the balance of hardships tips in their favor because they face the

10   irreparable harm described above while Defendants will suffer virtually no harm from an injunction

11   preventing them from continuing the arbitration.  *Id*.  Moreover, Plaintiffs contend that compelling

12   Defendants to adjudicate the issue of timeliness before a court rather than before an arbitrator is

13   proper.  *Id*. at 17 (citing *Doherty v. Teamsters Pension trust Fund of Philadelphia and Vicinity*, 16

14   F.3d 1386, 1391 n.4 (3d. Cir 1994); *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 901-902 (7th

15   Cir. 1988)).  Plaintiffs note that any injunction will be dissolved if Defendants demonstrate that the

16   timely initiated arbitration.  *Id*.  Plaintiffs emphasize that the arbitrator has not made any rulings, so

17   they are not attempting to escape any ruling of the arbitrator.  Reply, 10.

18   Finally, Plaintiffs state that the issuance of an injunction is in the public interest because

19   Congress crafted ERISA to expeditiously resolve disputes over withdrawal liability.  Plaintiffs'

20   Motion, 17-18 (citing *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 887 (2d Cir.

21   1988)).  Plaintiffs contend that enforcement of the procedural bar against employers who fail to

22   initiate disputes in a timely manner enforces this policy.  *Id*.

23   Opposing Defendants' Motion, Plaintiffs also argue that they have not waived their objection

24   to arbitration by their limited participation in arbitration proceedings.  Plaintiffs' Opposition, 11-17.

25   Relying on *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), Plaintiffs contend that they

26   did not voluntarily participate in arbitration because they immediately objected to arbitration,

27   expressed concerns about the validity of arbitration, limited their minimal participation to procedural

28   issues and actions necessary to preserve their rights, and did not proceed to arbitration on the merits of

United States District Court
Northern District of California

1   any of their claims.  *Id*. at 13-15 (citing *Nagrampa*, 469 F.3d at 1278-1280).  Moreover, Plaintiffs rely

2   on *Nagrampa* to distinguish several cases cited by Defendants where the objecting party engaged

3   more fully in the arbitration proceedings.  *Id*. at 15 (citing *Nagrampa*, 469 F.3d at 1279-1280).

4   Plaintiffs note that the *Nagrampa* court concluded that "merely arguing the arbitrability issue to an

5   arbitrator does not indicate a clear willingness to arbitrate the issue."  *Id*. at 15-16 (quoting *Nagrampa*,

6   469 F.3d 1279 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946, 115 S.Ct. 1920,

7   131 L.Ed.2d 985 (1995) (considering whether an objecting party had consented to arbitration)).  In

8   addition, Plaintiffs argue that a party does not waive its objection to the arbitrator's jurisdiction by

9   proceeding to the merits where the party explicitly reserves the objection.  *Id*. at 16 (citing *George*

10  *Day Constr. Co., Inc. v. United Brotherhood of Carpenters and Joiners of America*, 722 F.2d 1471,

11  1475 (9th Cir. 1984)).

12      **D.      Defendants' Contentions**

13          Defendants argue that the Court should compel arbitration for two alternative reasons.

14  Defendants' Motion, 6-8.  First, Defendants contend that their arbitration request was timely.  *Id*. at 6.

15  Defendants argue that further evidence must be adduced to determine whether Plaintiffs waived the

16  deadline to demand arbitration or whether the deadline to demand arbitration should be equitably

17  tolled.  Defendants' Opposition, 7.  In support of this argument, Defendants contend that Plaintiffs'

18  May 30, 2012 letter requesting documents indicated that Plaintiffs were continuing to review

19  Defendants' factual assertions, thus apparently agreeing to waive the statutory deadline.  *Id*. (citing 29

20  C.F.R. § 4221.3(b) ("[t]he parties may, however, agree at any time to waive or extend the time limits

21  for initiating arbitration")).  Defendants stress that the May 30, 2012 letter requests several

22  documents, reserved the right to request additional documents, and reminded Defendants that their

23  continuing deadlines to make withdrawal payments are not affected, but did not remind Defendants of

24  their asserted deadline to initiate arbitration in mid-June.  Brooks Declaration, ¶¶ 28-32.  Defendants

25  cite no case law to support this argument, and make no attempt to outline the legal standards

26  applicable to equitable tolling or agreements to waive the statutory deadlines.

27          Second, Defendants argue that Plaintiffs have already submitted their claim to arbitration and

28  therefore cannot challenge the authority of the arbitrator to act after receiving an unfavorable result.

United States District Court
Northern District of California

1    Defendants' Motion, 6 (citing *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994); *Ficek v.*

2    *Southern Pacific Co.*, 338 F.2d 655, 657 (9th Cir. 1964), cert. denied, 380 U.S. 988, 14 L.Ed.2d 280,

3    85 S.Ct. 1362 (1965)); Defendants' Reply in Support of Motion to Compel Arbitration ("Defendants'

4    Reply"), 7 (citing *Roderick v. Mazzetti & Assocs.*, 2004 U.S. Dist. LEXIS 22911, at *5, *14-*15

5    (N.D. Cal. Nov. 9, 2004) (Plaintiff attempted to withdraw very early in the arbitration process, but the

6    stage of arbitration was immaterial as Plaintiff had initiated arbitration)).  Defendants argue that

7    Plaintiffs have participated in arbitration for months by working with Weldway to select an arbitrator,

8    filing an answering statement and counterclaim, and making substantive and procedural arguments

9    during the telephonic case management conference.  Defendants' Motion, 7-8 (citing *Fortune,*

10   *Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356-1357 (9th Cir. 1983) (per curiam) (Plaintiff

11   manifested his intent to arbitrate the dispute where Plaintiff, without a specific agreement to arbitrate,

12   sent a representative to the arbitration who listened to the evidence, presented some evidence, and was

13   granted two continuances prior to withdrawing and denying any obligation to arbitrate)).  Defendants

14   attempt distinguish *Nagrampa* on the grounds that, in that case, the plaintiff never filed a response to

15   the arbitration, never participated in any proceedings that touched on the merits, and withdrew upon

16   denial of a fee waiver.  Defendants' Reply, 5.  Defendants argue that Plaintiffs have put forward their

17   evidence and argument on the timeliness issue.  *Id*. at 5-6.  Defendants emphasize that Plaintiffs

18   explained their decision to withdraw by citing "the Fund's expectation that the arbitrator would

19   summarily dismiss the matter."  *Id*. at 8 (citing Perez Declaration, Ex. 15).  Defendants state that a

20   party cannot condition its submission to arbitration on the arbitrator's agreement with that party's

21   position.  *Id*.

22          In their Reply, Defendants specify their position that Plaintiffs' submitted the issue of

23   timeliness to the arbitrator.  Defendants' Reply, 4-8.  Defendants note that in Plaintiffs' August 31,

24   2012 Answer, and in the September 18, 2012 letter, Plaintiffs requested the arbitrator decide the issue

25   of jurisdiction.  *Id*. at 2.  Defendants also note that Plaintiffs only withdrew from arbitration because

26   the arbitrator did not to summarily dismiss the case, effectively because the arbitrator decided that

27   summary dismissal was inappropriate.  *Id*. at 7-8.

28

In their Opposition, Defendants argue that a preliminary injunction, is inappropriate, even assuming the matter is properly before the court, because (1) Plaintiffs have not made a clear showing that they are likely to succeed on the merits; (2) Plaintiffs cannot establish a likelihood of irreparable injury; (3) the balance of the equities favors a denial of Plaintiffs' Motion; and (4) a preliminary injunction is not in the public interest. Defendants' Opposition, 6-11.

First, to support their argument that Plaintiffs are unlikely to succeed on the merits, Defendants rely on the same two arguments put forward in Defendants' Motion and outlined above. *Id*. at 6-7. Defendants stress that ambiguities in the record prevent Plaintiffs from making the requisite clear showing that they are entitled to relief. *Id*. at 6-7 (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).

Second, Defendants contend that Plaintiffs cannot establish a likelihood of irreparable injury because Plaintiffs are alleging monetary harm. *Id*. at 8 (citing *California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009)). In addition, Defendants assert that the purpose of the preliminary injunction is to assure that Plaintiffs will be able to collect on their judgment if they are successful. *Id*. Defendants contend that such a "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id*. (citing (*Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1998)). Moreover, Defendants argue that proceeding in federal court as opposed to arbitration will not reduce this economic injury. *Id*. Rather, Defendants state that Plaintiffs are simply trying to avoid the arbitrator's decision. *Id*. at 9.

Third, Defendants argue that the balance of the equities tips in their favor because Plaintiffs have not substantiated their injury allegations. *Id*. at 9-10. In addition, Defendants state that they will be deprived of the benefit of the arbitrator's decision to brief the bifurcation issue after Defendants expended resources in preparing for arbitration. *Id*.

Fourth, Defendants argue enjoining arbitration is contrary to ERISA's policies in favor of arbitration. *Id*. at 10 (citing 29 U.S.C. § 1401(a)(1)). Moreover, Defendants contend that equitable policy cannot allow an entity to seek to escape the jurisdiction of a tribunal after having received an adverse decision from that tribunal. *Id*. at 10-11 (citing *Ficek*, 338 F.2d at 656-657).

//

United States District Court
Northern District of California

11

United States District Court
Northern District of California

**III.     ANALYSIS**

    **A.     Legal Standard:  Preliminary Injunction**

       Federal Rule of Civil Procedure 65 permits the issuance of a preliminary injunction to preserve the positions of the parties until a full trial can be conducted.  *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20, 129 S.Ct. 365, 172 L.Ed.2d 249.  The Ninth Circuit evaluates the likelihood of success on a "sliding scale."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ("the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*").  The Ninth Circuit explained the serious questions formulation of the sliding scale as follows:  "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id*. at 1135.  A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam) (citation and emphasis omitted).  However, the opposing party must establish its likelihood of success as to any affirmative defenses.  *Gonzales*, 546 U.S. at 429-430, 126 S.Ct. 1211, 163 L.Ed.2d 1017.

    **B.     Motion for Preliminary Injunction**

       Plaintiffs have demonstrated a likelihood of success on the merits, a likelihood of irreparable injury in the absence of a preliminary injunction, that the balance of equities tips in their favor, and that the public interest will be served by granting a preliminary injunction.  Plaintiffs' Motion is granted.

       **1.     Likelihood of Success on the Merits**

       Plaintiffs contend that they are likely to succeed on the merits of their claim that Defendants are not entitled to arbitrate their withdrawal liability because Defendants failed to timely initiate

United States District Court
Northern District of California

1    arbitration.  Defendants contend that they timely initiated arbitration, that additional evidence may

2    impact the deadlines for initiating arbitration, and that Plaintiffs waived their objection to arbitration

3    by participating therein.  For the reasons discussed below, the Court finds that Plaintiffs are likely to

4    succeed on the merits.

5            **a.**      **Initiating Arbitration Under ERISA**

6                **i.**      **Background Law**

7          Pursuant to the MPPAA, the plan sponsor is obligated to notify the employer of the amount of

8    withdrawal liability, the schedule for liability payments, and to demand payment.  29 U.S.C. §

9    1399(b)(1).  No later than ninety days after receiving the above-described notice, "the employer-- (i)

10   may ask the plan sponsor to review any specific matter relating to the determination of the employer's

11   liability and the schedule of payments, (ii) may identify any inaccuracy in the determination of the

12   amount of unfunded vested benefits allocable to the employer, and (iii) may furnish additional

13   relevant information from the plan sponsor."  29 U.S.C. § 1399(b)(2)(A).  "After a reasonable review

14   of any matter raised, the plan sponsor shall notify the employer of-- (i) the plan sponsor's decision,

15   (ii) the basis for the decision, and (iii) the reason for any change in the determination of the

16   employer's liability or schedule of liability payments."  29 U.S.C. § 1399(b)(2)(B).  "Either party may

17   initiate … arbitration proceeding[s] within a 60-day period of the earlier of-- (A) the date of

18   notification to the employer under section 1399(b)(2)(B) of this title, or (B) 120 days after the date of

19   the employer's request under section 1399(b)(2)(A) of this title."  29 U.S.C. § 1401(a)(1).  The

20   relevant regulations provide that "[t]he parties may, however, agree at any time to waive or extend the

21   time limits for initiating arbitration."  29 C.F.R. § 4221.3(b).

22         Pursuant to 29 U.S.C. § 1401(a)(1), "[a]ny dispute over withdrawal liability as determined

23   under the enumerated statutory provisions shall be arbitrated."  *Allyn*, 832 F.2d at 504 (quoting *I.A.M.*

24   *Nat'l Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415 (D.C. Cir. 1987)).  If

25   an employer fails to initiate arbitration, the employer waives the opportunity to assert any defenses

26   that could have been raised before the arbitrator.  *Id*. at 505; *see also Operating Engineers' Pension*

27   *Trust Fund v. Clark's Welding and Machine*, 688 F.Supp.2d 902, 914-915 (N.D. Cal. 2010).  "If no

28   arbitration proceeding has been initiated [pursuant to section 1401(a)], the amounts demanded by the

1   plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by

2   the plan sponsor.  The plan sponsor may bring an action in a State or Federal court of competent

3   jurisdiction for collection."  *Clark's Welding and Machine*, 688 F.Supp.2d at 914 (quoting 29 U.S.C.

4   § 1401(b)(1)).

5       The Third and Seventh Circuits have held that whether arbitration was timely initiated may

6   properly be decided by the court.  *See*, *Robbins*, 866 F.2d at 901-902; *Doherty*, 16 F.3d at 1391 n.4.

7   In *Robbins*, the Seventh Circuit noted that, "if the question of whether arbitration was waived

8   remained an issue for the arbitrator, the time limits in the statute would be toothless; employers could

9   ignore the … statutory time limit for initiating arbitration and then move to dismiss the pension fund's

10  subsequent collection suit, claiming that the matter had to return to the arbitrator for a determination

11  of whether the failure to file constituted waiver."  *Robbins*, 866 F.2d at 901-902.

12      Although the Ninth Circuit has not directly addressed the issue, it is worth noting that,

13  pursuant to section 1401(a)(1), "[*a*]*ny* dispute between an employer and the plan sponsor …

14  concerning a determination made under sections 1381 through 1399 … shall be resolved through

15  arbitration."  *Allyn*, 832 F.2d at 505-506; *see also Bd. of Trs. of Constr. Laborers' Pension Trust for S.*

16  *Cal. v. M.M. Sundt Constr. Co.*, 37 F.3d 1419, 1420 (9th Cir. 1994) (per curiam) ("[u]nder ERISA,

17  disputes which arise under 29 U.S.C. §§ 1381-99 are to be resolved through arbitration").  In *Allyn*,

18  the parties disputed what constituted a "complete withdrawal" within the meaning of section 1383.

19  *Allyn*, 832 F.2d at 506.  Therefore, the Ninth Circuit held that arbitration of the issue was mandatory.

20  *Id*.  In contrast, the question of whether arbitration was timely initiated arises under section

21  1401(a)(1), not sections 1381 through 1399.  *See Doherty*, 16 F.3d at 1391 n.4 (concluding that "it is

22  for the court, not the arbitrator, to determine whether the initiation of arbitration is timely" because the

23  question of whether arbitration was timely initiated arises under section 1401(a)(1)).

24      In light of Congress' decision to explicitly require arbitration of disputes arising under only

25  sections 1381 through 1399 and the policy in favor of judicially enforcing the statutory deadlines, the

26  Court concludes that it must resolve the issue of timeliness.  *See also Operating Engineers' Pension*

27  *Trust Fund v. Fife Rock Prods. Co.*, 2011 WL 227665, at *2-*6 (N.D. Cal. Jan. 24, 2011) (granting

28  Defendants' motion to compel arbitration after determining that a letter sent by Defendants was

United States District Court
Northern District of California

14

1  sufficient to "initiate" arbitration within the meaning of section 1401, rather than reserving the issue

2  for the arbitrator).

3  ### ii.    Application of Law to Facts

4          Defendants did not timely initiate arbitration.  In their December 7, 2011 letter, Plaintiffs

5  satisfied their initial burden of notifying Weldway that they had assessed withdrawal liability.  The

6  letter listed the amount of the liability, the payment schedule, and demanded payment by check

7  mailed to a specified address in accordance with the payment schedule.  *See* 29 U.S.C. § 1399(b)(1);

8  Trento Declaration, Ex. F.  The date of receipt was, at the latest, December 14, 2011, the date

9  Defendants responded to Plaintiffs' letter.  Defendants were required to request review within ninety

10  days of their receipt of the December 7, 2011 letter.  *See* 29 U.S.C. § 1399(b)(2).  The ninety day

11  window closed on March 13, 2012, at the latest.  The only communications in that window were the

12  December 14, 2011 letter and the December 15, 2011, phone call between the Fund's counsel and

13  Weldway's principal.  *See* Perez Declaration, Ex. 14 (October 19, 2012 letter from Weldway's

14  counsel to the arbitrator stating that no communications occurred between Plaintiffs and Defendants

15  between December 16, 2011 and May 30, 2012).[2]  Whether or not either of these communications

16  constituted a request for review, Defendants attempt to initiate arbitration on August 16, 2012 was

17  untimely.

18          First, if neither communication constituted a request for review then Defendants failed to

19  satisfy their obligation to request review.  *See* 29 U.S.C. § 1399(b)(2).  Thus, Defendants would not

20  be entitled to initiate arbitration.

21          Second, assuming Defendants requested review on December 15, 2011, they were required to

22  initiate arbitration during the sixty day window between 120 days and 180 days of that request.  *See*

23  29 U.S.C. § 1401(a)(1)(B).  The window closed on June 12, 2012.  Defendants were not entitled to

24  wait until sixty days after Plaintiffs notified them of the denial of their request for review, because

25  that date was later than June 12, 2012.  *See* 29 U.S.C. § 1401(a)(1)(A).

26  ---

[2] Plaintiffs note that the Fund's Withdrawal Liability Procedures, of which Defendants were provided a copy, require the employer to request review in writing.  *See* Trento Declaration, Ex. D.  However, even if oral requests can be considered, the record shows that none were made between December 16, 2011 and the expiration of the ninety day window to request
27  review.  Defendants' counsel conceded this point.  Perez Declaration, Ex. 14.  In addition, Plaintiffs' counsel's billing records confirm that the only conversation between Plaintiffs' counsel and Defendants took place on December 15, 2011.
28  Supplemental Declaration of Julie A. Richardson, ¶ 4, Ex. O.  There is no evidence to the contrary.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The record provides no indication that the parties agreed to waive or extend the time limits for

2    initiating arbitration.  Defendants, based on their characterization of the facts, imply that Plaintiffs

3    waived or extended the statutory deadlines because they did not request documents to facilitate their

4    review until May 30, 2012, shortly before the deadline for initiating arbitration based on the request

5    for review date.  But there is no indication in the record that Plaintiffs agreed to waive or extend the

6    time limits for initiating arbitration.  Moreover, Defendants were not precluded from initiating

7    arbitration prior to the conclusion of Plaintiffs' review.  Indeed, they were required to do so.  *See* 29

8    U.S.C. § 1401(a)(1); *see also Central States, Southeast and Southwest Areas Pension Fund v.*

9    *Louisville Auto Rail Servs., Inc.*, 67 F.Supp.2d 933, 935 (N.D. Ill. 1999) (reasoning based on the plain

10   language of the statute that, where Plaintiffs did not respond to Defendants' request for review, the

11   sixty day period in which Defendants could request arbitration began to run 120 days after the request

12   for review); *Rao v. Prest Metals*, 149 F.Supp.2d. 1, 9-10 (E.D.N.Y. 2001) (same).

### b. Equitable Tolling of the Statutory Deadlines

#### i. Legal Background

15   The Ninth Circuit has not addressed whether equitable tolling applies to the statutory deadlines

16   for initiating arbitration under the MPPAA.  The Circuits that have addressed the issue are split.  *See*

17   *Bowers on behalf of NYSA-ILA Pension Trust Fund v. Transportacion Maritima Mexicana, S.A.*, 901

18   F.2d 258, 264 (2d Cir. 1990) (equitable tolling applies); *Doherty v. Teamsters Pension Trust Fund*, 16

19   F.3d 1386, 1393 (3d Cir. 1994) (equitable tolling applies); *Central States, Southeast & Southwest*

20   *Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376-1377 (7th Cir. 1992) (equitable tolling applies);

21   *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1065 (4th Cir. 1991), *cert. denied*, 504 U.S. 968, 112 S.Ct.

22   2325, 119 L.Ed.2d 224 (1992) (equitable tolling inapplicable).

23   "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:

24   (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

25   in his way." *Pace*, 544 U.S. at 418, 125 S.Ct. 1807, 161 L.Ed.2d 669.  Cases in other jurisdictions

26   applying equitable tolling under the MPPAA have generally required extraordinary circumstances,

27   such as fraud or unfair conduct.  *See Bowers*, 901 F.2d at 264-265 (Defendant was not entitled to

28   equitable tolling in the absence of fraudulent or unfair conduct where it failed to take any action to

1  initiate arbitration, harsh result was largely a "self-inflicted wound"); *Central States, Southeast &*

2  *Southwest Areas Pension Fund v. The Premarc Corp.*, 1994 U.S. Dist. LEXIS 11726, at *9-*13

3  (equitable tolling where statute of limitations was triggered by Plaintiff's response to Defendant's

4  request for review, Defendant sent letter specifically inquiring whether response had been sent,

5  Plaintiff intentionally remained silent although response had in fact been sent leaving Defendant

6  unaware that the statute of limitations was running, and Defendant initiated arbitration in the period

7  that would have been allowed had Plaintiff not responded to Defendant's request for review).  The

8  Court assumes, without deciding, that the doctrine of equitable tolling applies to initiating arbitration

9  under the MPPAA.

### ii.  Application of Law to Facts

11  Even assuming the doctrine of equitable tolling applies to the statutory deadlines to initiate

12  arbitration under the MPPAA, Defendants have not established that they are entitled to this

13  affirmative defense.  Defendants are presumed to be aware of the law – here, that their "request for

14  review," if made, commenced the running of a time limit within which they must demand arbitration.

15  There were no extraordinary circumstances that prevented Defendants from submitting the withdrawal

16  issue to arbitration.  Quite simply, there was nothing preventing Defendants from initiating arbitration

17  before the statutory deadline.  Equitable tolling is an affirmative defense on which Defendants bore

18  the burden of establishing their likelihood of success.  *See Gonzales*, 546 U.S. at 429-430, 126 S.Ct.

19  1211, 163 L.Ed.2d 1017.  Defendants have not done so.

### c.  Waiver of Objection to Arbitration

### i.  Legal Background

22  Participation in arbitration may, in some circumstances, waive the right to object to arbitration.

23  *See Ficek*, 338 F.2d at 657 ("[a] claimant may not voluntarily submit his claim to arbitration, await

24  the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act");

25  *Daniel*, 724 F.2d at 1356-1357 (Plaintiff could not reject arbitration after Plaintiff's representative

26  attended two hearings, heard all of the union's evidence, presented some evidence, and requested two

27  continuances, including one continuance to "secure witnesses to refute the evidence presented by the

28  union"); *Nghiem*, 25 F.3d at 1440 (Plaintiff could not challenge the authority of the arbitrator because

United States District Court
Northern District of California

1  Plaintiff "initiated the arbitration, attended the hearings with representation, presented evidence, and

2  submitted a closing brief of fifty pages"); *Roderick*, 2004 U.S. Dist. LEXIS 22911 at *14-*15

3  (Plaintiff could not challenge the authority of the arbitrator where the party initiated arbitration but

4  then objected to the arbitrator's procedural decisions). However, not all participation in arbitration

5  waives a party's objection to arbitration. *See Nagrampa*, 469 F.3d at 1278 (Plaintiff did not waive her

6  objection to arbitration where she objected to arbitration at the outset, requested a continuance, sent a

7  letter objecting to the validity of the arbitration (specifically its venue and fee clauses), participated in

8  one conference call that resulted in a scheduling order, and filed a counter-demand and a discovery

9  request to avoid losing the right to do so); *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d

10  781, 784, 788 (9th Cir. 2001) (Plaintiff did not waive its objection to arbitration by submitting a letter

11  challenging the arbitration itself, reserving the right to challenge jurisdiction, and stating that nothing

12  in the letter should be deemed a waiver).

13        In *Nagrampa*, the Ninth Circuit characterized the relevant inquiry as whether the party

14  "intentionally relinquished or abandoned [its] right to arbitration." *Nagrampa*, 469 F.3d at 1278-1279

15  (citing *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1170, 123 L.Ed.2d 508 (1993)). The

16  court elaborated that "merely arguing the arbitrability issue to the arbitrator does not indicate a clear

17  willingness to arbitrate that issue." *Id.* at 1279 (citing *First Options*, 514 U.S. at 946, 115 S.Ct. 1920,

18  131 L.Ed.2d 985 (considering whether objecting party had consented to arbitration)).

### ii.     Application to Facts

20        Plaintiffs have not waived their objection to arbitration. Plaintiffs' participation in arbitration

21  was limited. In chronological order, Plaintiffs participated in selecting an arbitrator, submitted an

22  answering statement with a counterclaim, agreed to wait for the selected arbitrator to be available,

23  submitted a letter addressing incorrect factual allegations made in Defendants answer, and

24  participated in a telephonic case management conference. Perez Declaration, ¶¶ 16-18, Exs. 8-11, 13.

25  The Plaintiffs' answer in the arbitration contested the arbitrator's jurisdiction. *Id.* at Ex. 9 ("[t]he

26  arbitrator has no jurisdiction to hear this matter or to render a decision on the merits"). According to

27  the letter from the AAA, Plaintiffs would have lost their right to participate in selecting an arbitrator

28  and to make their answering statement, in which they included their counterclaim, had they not done

1   so by August 31, 2012.  *Id.* at Ex. 7.  At the case management conference, Plaintiffs argued that the

2   arbitrator lacked jurisdiction and that the issue of jurisdiction should be decided prior to any

3   proceedings on the merits.  The parties dispute whether Plaintiffs stated that the arbitrator lacked

4   jurisdiction to decide any issues during the case management conference.  *Compare* Perez

5   Declaration, ¶ 18; *with* Ostil Declaration, ¶ 16.   In any event, as a result of the case management

6   conference, the parties agreed to a briefing schedule to address only the issue of bifurcation.  After the

7   case management conference, Plaintiffs withdrew from the arbitration, expressing their view that the

8   matter should have been summarily dismissed for lack of jurisdiction.  Perez Declaration, Ex. 15.

9         This case is much closer to *Nagrampa* than it is to those where the Ninth Circuit has found

10  that the plaintiff waived its objection to arbitration.  As in *Nagrampa*, Plaintiffs "forcefully objected

11  to arbitrability" at the outset.  *See Nagrampa*, 469 F.3d at 1280.  There is no indication that Plaintiffs

12  ever withdrew their objection.  *See id.*  Moreover, Plaintiffs did not proceed to arbitration on the

13  merits of any issue.  *See id.*  Rather, Plaintiffs' participation was limited to procedural issues and

14  actions necessary to preserve their rights.  *See id.* at 1278.

15        This case is distinguishable from those cited by Defendants where the plaintiffs had waived

16  their objection to arbitration.  Unlike *Daniel*, there have been no hearings on the merits where

17  evidence was presented.  *See Daniel*, 724 F.2d at 1356-1357.  Unlike *Roderick*, Plaintiffs did not

18  initiate arbitration.  *See Roderick*, 2004 U.S. Dist. LEXIS 22911 at *14-*15.  Unlike *Nghiem*,

19  Plaintiffs did not initiate the arbitration proceedings, attend hearings, present evidence, or file a

20  closing brief.  *See Nghiem*, 25 F.3d at 1440.  Finally, unlike *Ficek*, Plaintiffs have not received an

21  unfavorable decision on the merits.  *See Ficek*, 338 F.2d at 656.  Defendants contend that Plaintiffs

22  are merely attempting to escape an unfavorable decision of the arbitrator.  But the arbitrator has not

23  reached any decision.  Rather, the arbitrator has set a briefing schedule to determine whether the

24  jurisdictional issue should be bifurcated from the merits.  This is a preliminary procedural step taken

25  in advance of hearing argument and deciding the jurisdictional issue.  On this record, the Court finds

26  that Plaintiffs have not, by their conduct, intentionally relinquished or abandoned their right to object

27  to arbitration.  *See Nagrampa*, 469 F.3d at 1279.

28  //

United States District Court
Northern District of California

### 2.      Irreparable Harm to Plaintiffs

A plaintiff satisfies the irreparable harm requirement by demonstrating that irreparable injury is likely in the absence of an injunction.  *Winter*, 555 U.S. at 22, 129 S.Ct. 365, 172 L.Ed.2d 249. Several Circuits have held that a party is irreparably harmed by incurring costs arbitrating a dispute that the court has concluded in non-arbitrable.  *See McLaughlin*, 105 F.3d at 1194 ("[i]f a court has concluded that a dispute is *non*-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award"); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2001) ("movant would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable") (quoting *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997)); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 514-515 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).  Courts in this district have reached the same conclusion.  *See Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759, 766 (N.D. Cal. 2008); *AT & T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *10 (N.D. Cal. Oct. 26, 2011); *see also Sykes v. Escueta*, 2010 WL 4942608, at *4 (N.D. Cal. Nov. 29, 2010) (narrowly finding that failure to stay the arbitration in that case would leave plaintiff with "no adequate remedy at law to recover the monetary and human capital it would expend defending itself in arbitration," but declining to endorse a general rule that forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes irreparable harm).  This Court agrees that Plaintiffs will suffer irreparable harm if forced to arbitrate the dispute raised in this case.

### 3.      Balance of the Equities

The court must identify the harms that a preliminary injunction may cause to Defendants, and weigh those harms against Plaintiffs' threatened injury.  *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

As discussed above, denial of the preliminary injunction would irreparably harm Plaintiffs. Granting the preliminary injunction will force Defendants to defend the case in this forum.  Although

Defendants argue that they will also be deprived of the favorable ruling of an arbitrator, the fruit of months of effort, the only issue decided by the arbitrator was to request briefing on bifurcation. Defendants have not put forward any argument why they will endure any hardship establishing their defenses in court as opposed to in an arbitral forum.  The balance of the equities tips in Plaintiffs favor.

### 4.      The Public Interest

The public interests at stake weigh in favor of granting a preliminary injunction.  "Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner."  *Clark's Welding and Machine*, 688 F.Supp.2d at 914 (citing 29 U.S.C. § 1401(b)(1)). Indeed, "Congress was dissatisfied with collection procedures that resulted in lengthy, costly and complex litigation."  *Allyn*, 832 F.2d at 504 (internal quotations omitted).  So, "Congress designed the informal procedures to avoid the delay and expense in obtaining payment that pension plan sponsors would suffer were more formal proceedings required as a first step in resolving such disputes."  *I.A.M. Nat'l Pension Fund*, 825 F.2d at 426-427 (relying on the short deadlines provided by the statute, the requirement that employers make interim payments while arbitration is pending, and the legislative history).

Thus, contrary to Defendants argument, the relevant portions of ERISA do not favor arbitration for its own sake.  Rather, the statutory utilizes arbitration as a tool for its broader public policy goal of expeditiously resolving disputes such as this one.  To achieve that public policy, the statutory deadlines must be enforced.  Therefore, the public interest weighs in favor of granting a preliminary injunction in this case.

### C.      Motion to Compel Arbitration

Defendants' Motion is denied because Defendants failed to timely initiate arbitration and Plaintiffs did not waive their objection to arbitration, as explained in section III.B.1, above.

//

//

//

United States District Court
Northern District of California

21

**IV.     CONCLUSION**

       For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction is GRANTED and

Defendants' Motion to Compel Arbitration is DENIED.

       IT IS SO ORDERED.

Dated: January 28, 2013

_____

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California